Aaron S. Jacobs (Cal. Bar No. 214953)
ajacobs@princelobel.com
**PRINCE LOBEL TYE LLP**
One International Place, Suite 3700
Boston, MA 02110
Tel: (617) 456-8000

Matthew D. Vella (Cal. State Bar No. 314548)
mvella@princelobel.com
**PRINCE LOBEL TYE LLP**
357 S. Coast Highway, Suite 200
Laguna Beach, CA 92651
Tel: (949) 232-6375

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNILOC 2017 LLC,<br><br>　　Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>　　Defendant. | Case Nos.: 4:20-cv-04355-YGR<br>4:20-cv-05330-YGR; 4:20-cv-05333-YGR;<br>4:20-cv-05334-YGR; 4:20-cv-05339-YGR;<br>4:20-cv-05340-YGR; 4:20-cv-05341-YGR<br>4:20-cv-05342-YGR; 4:20-cv-05343-YGR<br>4:20-cv-05344-YGR; 4:20-cv-05345-YGR<br>4:20-cv-05346-YGR<br><br>**PLAINTIFF'S SUPPLEMENTAL OPPOSITION TO GOOGLE'S MOTION TO DISMISS** |

This Supplemental Opposition of Uniloc 2017 LLC ("Uniloc 2017") will recap the arguments from the refiled Texas briefs of a year ago, Dkt. No. 205[1], and in the process respond to the arguments or evidence cited in Google's Supplemental Brief ("Supp. Br.").

## I. THE *LONE STAR* DECISION REQUIRES THE MOTION BE DENIED

On May 30, 2019, five months after the last of these actions had been filed, the Federal Circuit handed down *Lone Star Silicon Innovations v. Nanya Technology*, 925 F.3d 1225, 1229-31 (Fed. Cir. 2019), which radically altered the law of standing for patent infringement actions. The court cited a recent Supreme Court decision, *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, (2014), as "irreconcilable with our earlier authority treating [35 U.S.C.] §281 as a jurisdictional requirement." *Lone Star*, 925 F.3d at 1235. Tracking decisions of other courts of appeal with respect to copyrights, the Federal Circuit held "[w]e therefore firmly bring ourselves into accord with *Lexmark* and our sister circuits by concluding that *whether a party possesses all substantial rights in a patent does not implicate standing or subject-matter jurisdiction.*" *Id*. at 1235-36 (emphasis added).

Under *Lone Star*, the only question a court would consider as to standing or jurisdiction is whether, at the time of filing, the named plaintiff had *Article III* standing. To have Article III standing, the plaintiff does not need to possess "all substantial rights," or, for that matter, any prescribed amount. Rather, all that is needed for jurisdiction is that the complaint adequately alleges a plaintiff "suffers an injury which can be fairly traced to the defendant and likely redressed by a favorable judgment." 925 F.3d at 1234, quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1982).

On the dates these actions were filed, Uniloc 2017 was the record owner of the patents with the sole right to bring an action to enforce them. As the owner, it also had the ability to grant licenses or to otherwise indulge infringement. Uniloc 2017 thus "suffers an injury" from Google's infringement, which injury would be "likely redressed by a favorable judgment." If anyone had Article III standing to enforce the patents on the date these actions were commenced, it would have

---

[1] To maintain consistency with Google's Supplemental Brief, all citations in this brief will be to Case No. 4:20-cv-05346-YGR, unless otherwise specified.

been Uniloc 2017. If, as Google alleges, Uniloc 2017 did not have Article III standing, then no one had Article III standing, and the patent could not be enforced – an absurd result.

Google's only argument as to jurisdiction is that a third-party, Fortress Credit Co. LLC ("Fortress"), had obtained a *nonexclusive* right to sublicense the patents-in-suit (which right it never exercised), and still possessed that right as of the date these actions were filed. That argument is unsupportable, as will be discussed *infra* at 6-8. But whether Fortress had such a right would not affect Uniloc 2017's Article III standing, because, as discussed above, a party's Article III standing would be based upon whether the party alleges having suffered an injury traceable to the challenged action of the defendant that would likely be redressed by a favorable judicial decision. *Lexmark*, 572 U.S. at 125. As the undisputed record owner of these patents, and sole holder of the right to sue and collect damages, Uniloc 2017 is unquestionably injured by Google's infringement, which injury a favorable judgment would redress.

*Lone Star* gives various examples of what would suffice to attain Article III standing, including "the ability to exclude others from practicing an invention" or to "forgive activities that would normally be prohibited under the patent statutes." 925 F.3d at 1234. Not only does Uniloc 2017 have the ability to "exclude others" – by enforcing the patents-in-suit – but it also has the ability to "forgive activities that would normally be prohibited under the patent statutes" by itself offering license rights to those that use the patented technology. Those rights distinguish Uniloc 2017 from entities "who lacked the ability to grant licenses or 'forgive' infringement." *Id*. Further, Uniloc 2017's complete ownership of the patents and of the sole right to enforce them exceeded the rights of the plaintiff[2] in *Lone Star*, who the Federal Circuit found *had* Article III standing.

*Lone Star* does not appear to leave any room for Google's argument, even if the Court were to credit all of Google's factual contentions.

It would seem *Lone Star* would render questionable any earlier decision finding a court did not have jurisdiction over an action brought by a patent owner. But even before *Lone Star*, when the test for jurisdiction was more rigorous, the Federal Circuit had repeatedly found a plaintiff to

---

[2] The plaintiff in *Lone Star* had only a right to assert the patent against certain listed entities, and, unlike here, its ability to transfer the patents was "substantially restrict[ed]." *Id*. at 1232-33.

have had standing to enforce a patent despite a third-party's having a nonexclusive right to sublicense that patent. *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1342 (Fed. Cir. 2006) (patent owner had standing, despite having transferred to a third-party a "virtually unfettered right to sublicense" the patent); *AsymmetRx, Inc. v. Biocare Med., LLC*, 582 F.3d 1314, 1316 (Fed. Cir. 2009) (patent owner had standing, despite having transferred to third-party the right to grant a sublicense); *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1375 (Fed. Cir. 2000) (plaintiff had standing, despite third-party's having a contractual right to grant additional sublicenses); *Alfred E. Mann Found. For Sci. v. Cochlear Corporation*, 604 F.3d 1354, 1362 (Fed. Cir. 2010) (patent owner had standing, despite having transferred to an exclusive licensee a right to grant sublicenses).

The decision in *Lone Star* would, if anything, relax that standard. *Schwendimann v. Arkwright Advance Coating, Inc.,* 959 F.3d 1065, 1071 (Fed. Cir. 2020) ("As long as the plaintiff alleges facts that support an arguable case or controversy under the Patent Act, the court has both the statutory and constitutional authority to adjudicate the matter").

Nothing in Google's Supplemental Brief helps Google on this issue, as the brief does not even cite to *Lone Star*. Nor does Google dispute Uniloc 2017's ownership of the patents-in-suit, its possession of the sole right to enforce the patents, or its ability to itself license the patents or otherwise forgive infringement.

On this basis alone, the Court must deny the motion to dismiss.

## II. UNILOC 2017 HAS "STATUTORY STANDING"

Google has moved to dismiss for lack of jurisdiction, alleging Uniloc 2017 does not have "statutory standing" to enforce the patents-in-suit. But *Lexmark* held "statutory standing" is not to be considered jurisdictional:

> We have on occasion referred to this inquiry as "statutory standing" and treated it as effectively jurisdictional. That label is an improvement over the language of "prudential standing," since it correctly places the focus on the statute. But it, too, is misleading, since "the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, i.e., the court's statutory or constitutional power to adjudicate the case.

572 U.S. at 128 n. 4 (citations omitted).

Title 35 allows the original patentee and "successors in title" to bring a civil action for patent infringement. *See* 35 U.S.C. §§100(d), 281; *Lone Star*, 925 F.3d at 1229-31. In some cases, whether a plaintiff meets the statutory standard depends upon whether it possesses "all substantial rights" in the patent. But *Lone Star*, following *Lexmark*, held that is not a jurisdictional issue.

As discussed above, if Uniloc 2017 had Article III standing when it filed these actions, then the Court has jurisdiction and cannot dismiss the action, even if Uniloc 2017 did not possess "all substantial rights." Rather, the question would then be whether a holder of other rights should be joined as a necessary party. *Lone Star*, 925 F.3d at 1236-39.

In any event, no other parties should be added, because Uniloc 2017 currently possesses "all substantial rights" in the patents-in-suit.

In May 2018, each of the patents-in-suit was assigned to Uniloc 2017 by its prior owner, Uniloc Luxembourg S.A. Dkt. No. 205-2, Loveless Decl., Ex. A. As part of the overall transaction, Uniloc 2017 vested certain rights in those patents to Uniloc Licensing LLC ("Uniloc Licensing") and CF Uniloc Holdings ("CFUH"). On October 25, 2018, in another action in this district, *Uniloc USA, Inc. v. Apple Inc.*, No. 3:18-00360 WHA (N.D.Cal.) (Alsup, J.) Dkt. No.135, Apple moved to dismiss, arguing, *inter alia*, that the rights Uniloc 2017 transferred to Uniloc Licensing and CFUH deprived Uniloc 2017 of standing to assert the patents.

To remove that issue from that action, and from any other actions that would be brought on patents in the Uniloc portfolio, on November 16, 2018, all rights that had been transferred to Uniloc Licensing and CFUH were restored to Uniloc 2017. Dkt. No. 205-2 at 11-12. As a result, as of November 17, 2018, Uniloc 2017 owned 100% of the rights in each of the patents-in-suit. And Uniloc 2017 continues to own 100% of the rights in those patents.

As a result of the November 2018 transactions restoring all rights to Uniloc 2017, Judge Alsup rejected Apple's standing arguments that had been based on the Uniloc Licensing and CFUH transactions:

> Though plaintiffs oppose Apple's assertions, they have nevertheless responded by removing the very issues that Apple contends divest Uniloc 2017 of standing. Specifically, in November 2018, Uniloc 2017 both terminated its agreement with Uniloc USA and removed the allegedly offending provisions in Uniloc 2017's agreement with CF Uniloc….

> As such, plaintiffs argue, Uniloc 2017 now possesses sufficient interest in the patents-in-suit to retain standing. This order agrees.

3:18-cv-00360 Dkt. No. 164-2 at 8-9 (January 17, 2019).

The first of these actions against Google was filed on November 17, 2018; the last on December 31, 2018. As discussed above, as of November 17, 2018, Uniloc 2017 owned 100% of the rights in the patents.

Google had initially argued, as had Apple, that Uniloc 2017 had ceded enforcement rights to Uniloc Licensing, Dkt. No. 205-1 at 9-10; Dkt. No. 205-3 at 4-6. But Google had overlooked the fact that the agreement giving Uniloc Licensing those rights had been terminated on November 16, 2018, before these actions were filed. *See* Dkt. No. 205-2 at 11, 205-4 at 6-7.

Google also copied Apple's argument that a May 3, 2018 agreement between Uniloc 2017 and CFUH required Uniloc 2017 to seek permission from CFUH before disposing of the patents. Google argued that restraint on alienation was sufficient to make CFUH an indispensable party. Dkt. No. 205-1 at 9-10; No. 205-3 at 4-6. But that agreement had been amended on November 16, 2018, to eliminate that restriction. Dkt. No. 205-2 at 11-12; Dkt. No. 205-4 at 7.

So, as of November 17, 2018 Uniloc 2017 owned 100% of the rights in the patents and thus was (and is) the only entity entitled to act as plaintiff in these actions.

In any event, motions to dismiss based on so-called "statutory standing defects" are properly brought under Rule 12(b)(6) rather than Rule 12(b)(1) because those defects are not jurisdictional. The Federal Circuit concluded "whether a party possesses all substantial rights in a patent does not implicate standing." *Lone Star*, 925 F.3d at 1235-36. Rather, where a plaintiff lacks all substantial rights, "it should be given an opportunity to join" other rights holders as necessary parties. *Id*. at 1236. Thus, if either of those entities still had any substantial rights – which neither does – the Court could simply add that entity to the action as a plaintiff.

Google's Supplementary Brief does not discuss its "statutory standing" argument, other than repeating its earlier allegation that rights that had been granted to Uniloc Licensing and CFUH, without mentioning those rights had been terminated before these actions were filed. Supp. Br. at 2.

## III. THERE IS AND WAS NO FORTRESS "RIGHT TO SUBLICENSE"

Google argued in its Supplemental Brief a third-party, Fortress, had obtained from Uniloc Luxembourg, the previous owner, and still retains, a nonexclusive right to sublicense the patents-in-suit, and that the Court should dismiss the action on that basis. But its argument fails for several reasons, legal and factual.

The first problem is a legal one: if the Court has jurisdiction, it cannot dismiss the action. And jurisdiction depends entirely on whether, as of the date of filing of these actions, Uniloc 2017 had Article III standing. *See* pp. 1-3 above. That Uniloc 2017 owned the patents, had the right to enforce them, and had the right to license them or otherwise indulge infringement was more than sufficient for Article III standing. It would seem Uniloc 2017 would be the only entity with Article III standing. That a third party had received from a previous owner a nonexclusive right to issue a sublicense would not diminish Uniloc 2017's rights. *See* cases cited at p.2, above. Under *Lone Star*, the Court cannot dismiss these actions; the most the Court could do would be to add Fortress as a plaintiff, if its presence were necessary.

Second, any rights Fortress would have had were terminated when it executed the Payoff and Termination Agreement ("Termination Agreement"), Dkt. No. 205-2, Turner Decl. Ex. C, on May 3, 2018. This issue was thoroughly discussed in Dkt. No. 205-1 at 5-6; Dkt. No. 205-2 at 3-6; Dkt. No. 205-3 at 1-3; and Dkt. No. 205-4 at 1-4. In a nutshell, Google argued the recipient of an unused "irrevocable" right to sublicense cannot terminate its own right to sublicense. Apart from its illogic and lack of legal support, discussed in the above briefing, that position conflicts with the License Agreement's designation of the right to sublicense as "transferable," Dkt. No. 205-1, Ex. E, §2, because termination is the equivalent of transferring the right back to the grantor. Because that termination preceded the filing of these actions, there could have been no right to sublicense as of the filing dates.

Google's Supplemental Brief raises no additional arguments and cites no additional evidence on the termination issue. If the Court agrees that the Termination Agreement terminated

any such right, then whether Fortress would have actually obtained such a right before the Termination Agreement becomes irrelevant to the Motion.

Third, for purposes of the Motion, Uniloc 2017 has assumed monetization targets set forth in the Revenue Sharing Agreement were not met. Whether that shortfall constituted an "Event of Default" presents a factual question. It is not just Uniloc 2017 that disputes whether there was a default. Fortress witnesses have repeatedly and consistently testified Fortress itself, during the relevant period, did not regard the monetization shortfall as a default, and explained why.[3] *See* deposition testimony of Fortress employees James Palmer and Erez Levy (Gannon Decl., Exs. 1 & 2); Palmer Decl., ¶¶ 7-20; Supp. Palmer Decl., ¶¶ 2-3. Even Google was forced to grudgingly concede "Consistent with his declarations, Mr. Palmer opined at his deposition … that Uniloc Lux and Uniloc USA did not default under the RSA." Supp. Br. at 3-4.

What Google is now doing, several years after the relevant period, is arguing Fortress, if it had wanted, could have cobbled together a theory of default in 2017 and relied on that theory to foreclose on the Uniloc Luxembourg financing. But, as all witnesses have consistently testified, that would not have reflected the contemporaneous business reality.

In any event, even if the shortfall were to be considered an event of default, Judge Alsup found that shortfall, and any other alleged events of default, were annulled under section 7.3 of the Revenue Sharing Agreement because they were "cured … to [Fortress's] reasonable satisfaction":

> Even assuming that the above-mentioned occurrences did constitute events of default, this order finds that they were annulled under section 7.3 of the Revenue Sharing Agreement…. That Fortress chose to execute a third amendment to the revenue sharing agreement with plaintiffs… and thus made substantial additional investments – despite knowledge of plaintiffs' alleged discrepancy between the actual and target (as set forth in the agreement) revenue – indicates that plaintiffs cured the purported default for failing to reach the… target revenue by March 31, 2017, to Fortress's reasonable satisfaction.

3:18-cv-00360 Dkt. No. 164-2 at 6.

---

[3] Google also alleged Uniloc Luxembourg materially breached a covenant with respect to representations and warranties. Dkt. No. 205-1 at 4-5. Uniloc 2017 disputed whether there was a breach, and whether it would have been material. *See* Dkt. No. 205-2, Palmer November 9, 2018 Decl., ¶¶ 14-20. In any event, Fortress did not regard the statements in question as either inaccurate or material. *Id*.

Google appears at a loss to poke holes in Judge Alsup's reasoning. Google does not deny Fortress was "reasonably satisfied" with the amount of monetization revenue that had been achieved and with the Uniloc relationship as a whole. Rather, Google argues Judge Alsup erred because Fortress's satisfaction is not good enough – to effect a "cure." Google argues, the defaulting party must have taken some "action" to bring about that satisfaction. But as regards monetization targets, Uniloc Luxembourg did take "action." Among other things, it accumulated whatever monetization revenue it could, and otherwise met Fortress's financial expectations. The issue is whether Fortress was "reasonably satisfied" with the revenue realized by those efforts.[4]

Fortress has repeatedly testified it was satisfied, and Google does not dispute Fortress was satisfied. Judge Alsup accepted Fortress's testimony and found Uniloc's action, together with Fortress's satisfaction, constituted a cure that annulled any Events of Default. As Judge Alsup put it: "Under these circumstances, … Fortress's conduct *and* representations in the Palmer declaration can only be understood as excusing of the purported default(s) – amounting to a cure – by Fortress." 3:18-00360 Dkt. No. 164-2 at 7.

---

[4] Google argues Fortress did not "waive" the default. Dkt. No. 205-1 at 7-8; Supp. Br. at 6. But that argument is a straw man. In §7.3 of the Revenue Sharing Agreement, which describes annulment of defaults, the waiver provision (x) is separate from the annulment provision (y). Dkt. No. 205-1, Ex. D at 47-48. It is the latter that Judge Alsup relied upon in rejecting an identical argument by Apple. In any event, the Termination Agreement waived all claims. Dkt. No. 205-2 at 7-8.

Google misleadingly cites deposition testimony from Uniloc and Fortress witnesses to the effect that they were not contemporaneously aware of any "formal" waiver or cure of a default. Supp. Br. at 3. Google leaves out their explanation: at the time, none of them believed there had been a default. *See* Gannon Decl., Exs. 1 & 2.

| | | |
|---|---|---|
| 1 | Dated: October 16, 2020 | Respectfully submitted, |
| 2 | | */s/ Aaron S. Jacobs* |

Dated: October 16, 2020      Respectfully submitted,

*/s/ Aaron S. Jacobs*
Aaron S. Jacobs (Cal. Bar No. 214953)
ajacobs@princelobel.com
**PRINCE LOBEL TYE LLP**
One International Place, Suite 3700
Boston, MA 02110
Tel: (617) 456-8000

Matthew D. Vella (Cal. State Bar No. 314548)
mvella@princelobel.com
**PRINCE LOBEL TYE LLP**
357 S. Coast Highway, Suite 200
Laguna Beach, CA 92651
Tel: (949) 232-6375

Attorneys for Plaintiff